UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-60818-SMITH/REID

PENDER SENATUS,

    Plaintiff,

v.

GERARDO LOPEZ, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This cause is before the Court upon Defendants' Motion for Judgment on the Pleadings. [ECF No. 101]. For the reasons addressed below, it is **RECOMMENDED** that Defendants' Motion be **GRANTED** and Plaintiff, Pender Senatus's Amended Complaint [ECF No. 25], be **DISMISSED**.

## BACKGROUND

Plaintiff Pender Senatus filed this action for damages under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), involving a particularly egregious set of allegations, an alleged use of excessive force by Broward County Sheriff's deputies who had been deputized as part of a United States Marshal Fugitive Task Force (the "Task Force") charged with apprehending dangerous fugitives. Senatus, was wanted for murder.[1] Defendants

---

[1] The Court takes judicial notice that at the time of the subject incident Senatus was wanted for a murder, to which he later pleaded guilty in State court. *See State of Florida v. Pender Seantus*, 17-8780CF10A (Fla. 17th Cir. July 26, 2017); *State of Florida v. Pender Senatus*, 17-8780CF10A (Fla. 17th Cir. June 28, 2021).

1

Gerardo Lopez, David Jaques, and Hank Juntunen, acting in their role as members of the Task Force, located Senatus at his Delray Beach, Florida, home on July 25, 2017. [ECF No. 25 at 1].

Taking Senatus's allegations as true, as we must at this juncture, *see Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016), when Defendants arrived at Senatus's residence he was speaking on his cell phone while walking into his residence. [*Id.*]. When Senatus heard, "Don't move! Don't Run!," he turned around and saw Defendants issuing the commands. [*Id.*]. Before he had an opportunity to react, the officers tackled him and placed him on his stomach, all while he repeatedly asked, "What did I do." [*Id.* at 2]. One officer yelled that Senatus had a gun. [*Id.*]. Thereafter, another officer got onto Senatus's back and handcuffed him. [*Id.*]. The situation purportedly deteriorated from there. While he was handcuffed, the officers began "punching and kicking him, while screaming 'stop resisting! Stop resisting!'" [*Id.*]. Although he was not resisting, tried to remain as still as possible, and was completely bound, the beating continued. [*Id.*].

After the beating, the officers lifted Senatus to his knees. [*Id.*]. Senatus was weak, bleeding, disoriented, in severe pain, and had lost several teeth. [*Id.*]. The officers then dragged him in front of the "car porch" of his home and dropped him face down onto the pavement. [*Id.*]. Further, an officer struck Senatus in the face using a racial epithet. [*Id.*]. Eventually, Senatus, rendered unconscious by the beating, was transported to a nearby hospital. [*Id.*].

Senatus avers that he sustained a "broken nose, black eye, several hematomas (knots) all over his head and face, five missing teeth, a fractured jaw, and severe long-term, possibly permanent damage to his right arm." [*Id.* at 3]. Further, he claims he still cannot raise his arm over his head and suffers from nightmares of police beatings. [*Id.*].

## DISCUSSION

In its 1971 *Bivens* decision, the Supreme Court recognized a damages remedy against individual federal law enforcement agents who violated a plaintiff's Fourth Amendment Right against unreasonable search and seizure. *See generally* 403 U.S. 388–98. *Bivens* involved a warrantless search of the plaintiff's home, and federal law enforcement's use of excessive force against the plaintiff in executing the search and subsequent arrest. *Id.* The Supreme Court recognized that the Fourth Amendment "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.'" *Id.* at 393. (citations omitted). The Court explicitly rejected the respondent's argument that Bivens' only remedy for money damages was an action in tort under state law in the state courts. *Id.* at 390–91. The Court reasoned that since state law remedies or federal statutory schemes did not encompass the sort of constitutional violation the plaintiff experienced, and because "no special factors counsel[ed] hesitation in the absence of affirmative action by Congress," the imposition of an implied damages remedy was appropriate. *Id.* at 395–96.

Indeed, for many years *Bivens* provided a remedy for injuries such as those Senatus alleges he sustained. *See, e.g., Johnson on behalf of Haynes v. Smith*, No. 1:21-CV-05037-SDG, 2022 WL 525888, at *2–3 (N.D. Ga. Feb. 22, 2022) (finding that the plaintiff pleaded a plausible Fourth Amendment excessive use of force claim under *Bivens* for a shooting allegedly done by United States Marshals); *Teen v. Poland*, No. 4:17-CV-1787 RLW, 2018 WL 1069149, at *2 (E.D. Mo. Feb. 23, 2018) (concluding the plaintiff set forth facts sufficient to state a plausible claim for relief against a United States Marshal for a Fourth Amendment excessive force claim arising out of the

use of a taser during the plaintiff's arrest); *Solomon v. Petray*, 795 F.3d 777, 791 (8th Cir. 2015) (affirming the trial court's denial of the defendants' motion for summary judgment because the plaintiff stated a cognizable *Bivens* claim for excessive use of force against a United States Marshal).

This is no longer the case, however. After the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), Senatus's allegations no longer support a cognizable *Bivens* action. Therefore, Defendants are entitled to judgment on the pleadings.

**I.  Judgment on the Pleadings Standard**

Federal Rule of Civil Procedure 12(c) provides that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). It is appropriate for a court to grant a motion for judgment on the pleadings "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). In reviewing a motion for judgment on the pleadings the court is to take all the non-movant's allegations as true, and if the pleadings reveal any dispute surrounding material facts, judgment on the pleadings must be denied. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

Federal courts are reluctant to dispose of cases in this summary manner unless "it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019). In assessing a motion for judgment on the pleadings a court may consider the pleadings and any judicially noticed facts. *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve this end, pleadings must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-harmed-me accusation." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Mohamed v. Palestinian Auth.*, 566 U.S. 449 (2012). Rather, the plausibility "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

## II. The Supreme Court's Recent Decision in *Egbert* Forecloses this Court from Extending *Bivens* to Senatus's Claims

As *Egbert* serves as the death knell to Senatus's claims, the case deserves some attention. But first, a brief history of the recognized *Bivens* actions, and the Supreme Courts gradual restriction of the same, is warranted.

As one court recently put it "[t]he story of *Bivens* is a saga played out in three acts: creation, expansion, and restriction." *Silva v. United States*, No. 21-1008, 2022 WL 3023684, at *2 (10th Cir. Aug. 1, 2022). The Court expanded *Bivens* outside of its narrow Fourth Amendment application twice: once for a congressional aide's claim of gender discrimination in violation of the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228 (1979), and again for a prison official exhibiting deliberate indifference to a prisoner's medical needs in violation of the Cruel and Unusual Punishment Clause of the Eight Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). That ended the Court's *Bivens* "expansion" phase.

Following *Davis* and *Green*, the Court's *Bivens* jurisprudence can be characterized as an attempt to restrict or contain these lines of cases as closely to the factual circumstances giving rise to them as possible. Over the next few decades "the Court has performed its own version of Bonaparte's retreat from Moscow and progressively chipped away at the [*Bivens*] decision—to the point that very little of its original force remains." *Silva*, 2022 WL 3023684, at *2.

In 2017, the Court set forth a two-pronged test to determine whether a *Bivens* claim may proceed. *See generally Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). The first prong requires courts to ascertain whether the claim is presenting *Bivens* in a "new context" or involves a "new category" of defendants *Id.* at 1859; *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). If a plaintiff's claim differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Ziglar*, 137 S. Ct. at 1859. The Court stressed that since it considers expanding the *Bivens* remedy "a disfavored judicial activity … it has consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (internal quotation marks and citation omitted). Next, in the event a case does present a new context, courts are to evaluate whether "special factors" militate against extending *Bivens*. *Id.* The predominant question courts should

6

look to in undertaking this evaluation is whether Congress, and not the courts, is at least arguably better equipped to determine the propriety of creating a new damages action. *Id.*

That takes us to *Egbert*. The plaintiff in *Egbert* owned and operated a bed-and-breakfast which abutted the United States-Canada border. 142 S. Ct. at 1800–01. A Border Patrol agent, believing the plaintiff was using his bed-and-breakfast for illegal purposes, initiated a search of the plaintiff's establishment. *Id.* at 1801. The plaintiff averred that during the search the agent used excessive force, and following complaints to the agent's superiors, the agent retaliated against him by reporting him to the IRS. *Id.* at 1801–02. In response, the plaintiff filed suit, which included two *Bivens* claims. *Id.* at 1802. First, a Fourth Amendment excessive force claim which the Court acknowledged "present[ed] 'almost parallel circumstances'" to the facts underlying *Bivens*. *Id.* Second (and not relevant here), a First Amendment retaliation claim. *Id.*

In evaluating the plaintiff's claims, the Court noted that while it was choosing not to "dispense with *Bivens* altogether" it again emphasized that "recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Id.* at 1803 (quoting *Ziglar*, 137 S. Ct. at 1856–57). Justice Thomas, writing for the majority, instructed that, when lower courts are asked to imply a *Bivens* extension, they should look to the two-step test set forth in *Ziglar*. The Court, however, noted that while *Ziglar* and its progeny "described two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* The answer to this question, the Court surmised, will almost always be yes and that if "there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* (internal quotation marks and citation omitted). Additionally, the *Egbert* Court emphasized that "a court may not fashion a *Bivens* remedy if

7

Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858).

Ultimately, despite the plaintiff's claims bearing a tremendous resemblance to those made in *Bivens* itself, the Court rejected the plaintiff's Fourth Amendment claim. *Id.* The Court did so "for two independent reasons." *Id.* First, the Court concluded that Congress, not the judiciary, was better equipped to determine the propriety of permitting a damages action to proceed against Border Patrol agents. *Id.* at 1805. In large part, this decision was based on the potential national security implications from such a decision, which are decisions courts should avoid "because matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Id.* at 1805–05 (internal quotation marks and citation omitted). Second, the Court found the Border Patrol's congressionally created internal grievance system was a sufficient alternative remedy, which foreclosed *Bivens* relief. *See Id.* at 1807 (noting that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the court cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as in individual damages remedy") (internal quotation marks and citation omitted).

In short, in *Egbert*, *Ziglar*'s two-step *Bivens* analysis has been reduced to a single step that makes an action under *Bivens* virtually unavailable to litigants. As the Tenth Circuit aptly described *Egbert*'s holding, "[t]he Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril … [and lower courts should be] left in no doubt that expanding *Bivens* is not just a disfavored judicial activity, it is an action that is impermissible in virtually all circumstances." *Silva*, 2022 WL 3023684, at *1, 4 (internal quotation marks and

8

citation omitted). In any event, the undersigned will analyze Plaintiff's case using *Ziglar*'s two-step *Bivens* analysis and then the *Egbert* Court's single step.

### A. Affording Senatus Relief in This Case Would Require Extending *Bivens* to a New Context

As to the first prong of the test set forth in *Ziglar*, the facts of this case certainly constitute a "new context" of *Bivens* claim. Of the three types of *Bivens* claims the Court has recognized, only *Bivens* itself is applicable here. As Defendants note in their Motion, given the tremendously broad application of the term "new context," the simple fact that the arrest in this case was conducted pursuant to a warrant is sufficient to distinguish it from *Bivens*, and brings it outside the realm of a cognizable *Bivens* claim. *See Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (collecting cases and noting the case, which involved excessive force claims against U.S. Marshals arresting a fugitive, presented a "new context" because the defendants had acted pursuant to a valid warrant, and numerous post-*Ziglar* cases have held "that the presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating differs from the warrantless narcotics-investigation circumstances in *Bivens*"). This alone is sufficient to constitute a "new context" for a *Bivens* claim.

Further, affording Senatus *Bivens* relief would require extending *Bivens* beyond FBN agents. Defendants here were members of a fugitive task force deputized by the United States Marshals. Recently, other courts have held that where the defendants are governmental officials different than the narcotics agents in *Bivens*, affording the plaintiff relief would constitute an impressible extension of *Bivens* into a "new context." *See, e.g., Cienciva,* 2022 WL 2791752, at *9–10 (refusing to extend *Bivens* to a Fourth Amendment excessive force case involving U.S. Marshals executing an arrest warrant); *K.O. by & through E.O. v. Sessions*, No. 20-5255, 2022

9

WL 3023645, at *3 (D.C. Cir. July 29, 2022) (declining to extend *Bivens* to class of defendants because the plaintiff's claims implicated a new defendants).

Since Senatus's claims arises in a new context, we must move on to the second step, and evaluate whether there are any special factors which counsel hesitation in extending *Bivens* to this case.

### B. Special Factors Counsel Hesitation in Extending the *Bivens* Remedy to the Instant Case, Namely the U.S. Marshals' Existing Internal Grievance Procedures

The most apparent special factor which weighs against extending *Bivens* to the instant case is the U.S. Marshals' existing internal grievance procedure. In *Cienciva*, on facts nearly identical to the ones here, the court stated as follows:

> Having thoroughly reviewed the *Egbert* decision, we are constrained to conclude that an alternative available remedy exists for Cienciva within the legal mandates of the United States Marshals Service, in much the same way the Court concluded one existed for Boule. *See Egbert*, 142 S. Ct. at 1806–07. By statute, the Director of the Marshals must "supervise and direct the United States Marshals Service in the performance of its duties." *See* 28 U.S.C. § 561(g). By regulation, the Director "shall direct and supervise ... [i]nvestigations of alleged improper conduct on the part of U.S. Marshals Service personnel." *See* 28 C.F.R. § 0.111(n). That our own independent consideration of the adequacy of such an investigation or process may question its deterrent effects is of no moment; the *Egbert* decision admonishes us not to graft a judicial remedy onto an existing grievance process that "independently foreclose[s]" a *Bivens* cause of action. *See Egbert*, 142 S. Ct. at 1806.

2022 WL 2791752, at *10. This Court is constrained in the same manner as the court in *Cienciva*. The *Egbert* Court has made clear that *Bivens* does not provide Senatus with a remedy for Defendants' alleged egregious conduct. Instead, Congress has created a remedial structure in which the U.S. Marshals are to conduct their own investigation into purported abuse by those acting on its behalf.[2] Consequently, this Court cannot extend *Bivens* to the instant case.

---

[2] Defendants also raise the Federal Tort Claims Act ("FTCA") as another remedial structure available to Senatus. [ECF No. 101 at 13–14]. Courts are split on whether the FTCA serves as an alternative remedy to a *Bivens* action. *Compare Crocker v. USP 1 Coleman*, No. 5:20-CV-568-CEM-PRL, 2022 WL 272173, at *5 (M.D. Fla. Jan. 6, 2022) (concluding that the FTCA was a potential alternative remedy counseling hesitation in extending *Bivens*), *with*

Finally, once the two-step *Ziglar* analysis is collapsed into the single question as *Egbert* requires— "whether there is any reason to think that Congress might be better equipped to create a damages remedy"—*Egbert* asserts that Congress will be in "in most every case." *Id*. at 1803. Whether there are sound reasons to believe that Congress, not the courts, would be better equipped to create a damages remedy for the type of injuries Senatus purportedly sustained is difficult for me to judge. *Cf. Cienciva*, 2022 WL 2791752, at *10 (concluding that Congress would be better equipped to create a damages remedy for alleged excessive force used by U.S. Marshals because "[i]mplying a damages remedy for excessive force in [the plaintiff's] case is harmful to the duty of the Marshals Service to make judgment calls about the use of force needed to execute a judicially authorized arrest warrant"). Notably, courts and jurists have often made judgment calls about the use of force in cases brought pursuant to 42 U.S.C. § 1983. Damages actions pursuant to 42 U.S.C. § 1983 represent the remedy that Congress created for plaintiffs whose constitutional rights have been violated by *state* officials.

Without doubt, however, numerous other implications from such a decision can be raised which could at least arguably counsel judicial restraint under these circumstances. And therein lies the problematic nature of the *Egbert* Court's test, which states: if a court can find "even one" reason to believe Congress would be better equipped to create a damages remedy than the judiciary, then a *Bivens* action may not proceed. 142 S. Ct. at 1805. Having cleared this low hurdle (which a court will conceivably always be able to), this Court is impelled to conclude the potential consequences and policy concerns of expanding the *Bivens* damages remedy is a job better suited

---

*Cienciva*, 2022 WL 2791752, at *10 n. 7 (noting that the court disagreed "with defendants' insistence that the FTCA stands as an alternative that forecloses a *Bivens* remedy…. [because the] FTCA's exclusive remedy provision does not apply to suits brought for a violation of the Constitution of the United States") (internal quotation marks and citation omitted). This Court need not reach the issue of whether the FTCA does in fact serve as an alternative remedy, as the U.S. Marshal's internal grievance procedure clearly constitutes a remedy to which Senatus could have availed himself.

11

for Congress rather than the courts. Consequently, Senatus's claims against Defendants may not proceed.

## CONCLUSION

For the foregoing reasons it is **RECOMMENDED** that Defendants' Motion for Judgment on the Pleadings [ECF No. 101] be **GRANTED**, and that this case be **DISMISSED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 12th day of October, 2022.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Rodney Smith;**

**All Counsel of Record**